IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BOONE'S PHARMACY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 22-00375-JB-N |
| | ) |
| EZRIRX, LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Motion to Strike Class Allegations or Deny Class Certification and briefs in support thereof (Docs. 29, 29-1, and 29-2), Plaintiff's opposition thereto (Docs. 34-1, 34-2, and 34-3), and Defendant's reply (Docs. 44 and 45). A hearing on the motion was held on July 5, 2023. After careful review of the relevant filings and the arguments presented at the hearing, Defendant's motion to dismiss is **GRANTED**.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

This case arises under the Telephone Consumer Protection Act ("TCPA"). Plaintiff, Boone's Pharmacy, Inc. ("Boone's"), is a small independent family pharmacy located in Demopolis, Alabama. (Doc. 20-3). Defendant, EzriRx, LLC ("EzriRx") is a pharmaceutical marketplace that connects wholesalers and pharmacies across the United States, allowing pharmacies to compare prices and find the best deals. (Docs. 20-1 and 29-1). According to Plaintiff, EzriRx obtained fax numbers for Plaintiff, and others similarly situated, from directories

including a directory published by National Council for Prescription Drug Programs ("NCPDP")[1]. (Doc. 20).  The NCPDP directory includes the identity of a pharmacy's authorized representative. (*Id.*)  After obtaining the fax number and telephone number from directories, Defendant had third parties call Plaintiff and other similarly situated entities to confirm the accuracy of the fax number and purportedly to obtain "consent" to be faxed advertisements. (*Id.*)

In July 2021, an EzriRx representative named Crystal called Boone's Pharmacy on behalf of EzriRx. A person named Sophie—a Boone's Pharmacy employee, answered the phone and the following conversation ensued:

> Caller 1:  Boone's Pharmacy.
>
> EzriRX Agent: Hi, this is Crystal calling on behalf of EzriRx on a recorded line.  I just want to confirm your fax number to be able to send you a marketing material about us.  Is it (205) 652-7025, right?
>
> Caller 1:  Yes, ma'am, it is.
>
> EzriRX Agent:  And your name, please?
>
> Caller 1:  My name is Sophie.
>
> EzriRX Agent:  I'm sorry, what?
>
> Caller 1:  My name is Sophie, S-O-P-H-I-E.
>
> EzriRX Agent:   Okay. Thank you.
>
> Caller 1:  Uh-huh.

(Doc. 20-4).  Following the above conversation, EzriRx sent Boone's faxes on two occasions: September 15 and September 19, 2022.  (Doc. 20)

---

[1] NCPDP is a not-for-profit trade group which has been recognized in various federal statutes, including the Health Insurance Portability and Accountability Act ("HIPPA").

On September 21, 2022, Plaintiff filed the instant putative class action alleging EzriRx violated the TCPA, by sending Plaintiff faxes without consent. (Doc. 1). Plaintiff's Complaint was later amended on December 19, 2022. (Doc. 20). On February 8, 2023, Defendant filed the instant motion to dismiss based on the affirmative defense of consent and motion to strike class certification based Plaintiff's inability to ostensibly certify a class. (Docs. 29, 29-1, and 29-2). The same day, Defendant filed a Counterclaim for breach of contract and negligent misrepresentation, based on Plaintiff's filing the instant lawsuit after being notified that Boone's consented to the subject faxes. (Doc. 30). Plaintiff has responded to Defendant's motion to dismiss alleging that Boone's employee did not have the authority to give consent such that EzriRx acted in violation of the TCPA. (Doc. 34-2). Plaintiff additionally contends Defendant's motion to strike is premature or otherwise subject to denial. (Doc. 34-3). Defendant timely replied (Docs. 44 and 45). Finally, Plaintiff has filed a Motion to Dismiss Defendant's counterclaim (Doc. 35), Defendant has responded (Doc. 46), and Plaintiff has replied. (Doc. 47).[2]

II. **DISMISSAL STANDARD**

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must view the allegations in the light most favorable to the plaintiff and accept the allegations of the complaint as true. *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010). To avoid dismissal, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face" and "raise a right to relief above

---

[2] The hearing in this matter was limited to Defendant's motion to dismiss. In light of this Order, Defendant should notify the Court of whether it wishes to continue to pursue its counterclaims by written motion no later than August 14, 2023.

the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations and quotations omitted). The Court should not assess "whether a plaintiff will ultimately prevail but" consider "whether the claimant is entitled to offer evidence to support the claims." *Id*. at 583 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556. "The Supreme Court's *Twombly* formulation of the pleading standard "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Williams v. Henry*, 2009 WL 3340465, at *2 (S.D. Ala. Oct. 15, 2009) (citations and internal quotations omitted). "A district court may properly dismiss a complaint if it rests only on 'conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts.'" *Magwood v. Sec'y, Florida Dep't of Corr.*, 652 F. App'x 841, 843 (11th Cir. 2016), cert. denied sub nom. *Magwood v. Jones*, 137 S. Ct. 675 (2017) (quoting *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)).

### III. MOTION TO DISMISS

Defendant's motion is premised on one position: that Plaintiff cannot state a plausible cause of action against it for violation of the TCPA because Plaintiff gave its prior express permission or consent to receive the subject faxes, rendering the transmission solicited. (Doc. 29-1, generally). In response, Plaintiff argues that the employee who was contacted by Defendant, Sophie, did not have the authority to consent, rendering Defendant's fax transmittals unsolicited. (Doc. 34-2, generally).

As an initial matter, the Court notes that consent is an affirmative defense. A motion to dismiss pursuant to 12(b)(6) does not generally permit an analysis of potential defenses a defendant may have to the asserted claims. *See Brooks v. City of Winston–Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). However, an "affirmative defense ... may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Scott v. Merchants Ass'n Collection Division, Inc.*, 2012 WL 4896175, at *2 (S.D. Fla. Oct. 15, 2012) (quoting *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1274–75 (11th Cir. 2004)); *See also Murphy v. DCI Biologicals Orando, LLC*, 797 F.3d 1302, 1308 (11th Cir. 2015) citing to *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993) ("By voluntarily providing his cell phone number to DCI, [plaintiff] gave his prior express consent to be contacted. Because [plaintiff's] complaint alleges, on its face, facts that demonstrate prior express consent, we affirm the district court's dismissal of [plaintiff's] claims.")

### A. Prior Express Permission

In 1991, Congress passed the Telephone Consumer Protection Act and amended it with the Junk Fax Prevention Act in 2005, to protect consumers from unsolicited fax advertisements. *See* Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified as amended at 47 U.S.C. § 227); Pub. L. No. 109-21, 119 Stat. 359 (2005) (codified at 47 U.S.C. § 227). The Act prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." *Id*. § 227(b)(1)(C). It defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id*. § 227(a)(5). In analyzing "prior express invitation or permission", the Eleventh Circuit has stated as follows:

> Because the Act does not define "prior express ... permission," we give that term "its 'contextually appropriate ordinary meaning.' " *In re Failla*, 838 F.3d 1170, 1176 (11th Cir. 2016) (quoting Antonin Scalia & Bryan A. Garner, Reading Law § 6, at 70 (2012)). The term "permission" is defined as "the official act of allowing someone to do something" or "[a] license or liberty to do something; authorization." *Permission*, Black's Law Dictionary (11th ed. 2019); *see also Permission*, Oxford English Dictionary (online ed.) (defining "permission" as the "action of permitting, allowing, or giving consent; consent, leave, or liberty to do something"). And "express permission" is permission "that is clearly and unmistakably granted by actions or words, oral or written." *Permission*, Black's Law Dictionary (11th ed. 2019). The Commission has also provided some guidance on the meaning of express permission: "Express permission to receive a faxed ad requires that the consumer understand that by providing a fax number, he or she is agreeing to receive faxed advertisements." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 Fed. Reg. 44144, 44168 (FCC July 25, 2003). The qualifier "prior" modifying "express permission" means that the fax recipient must have given his express permission before the fax was sent. *See Prior*, Oxford English Dictionary (online ed.) (defining "prior" as "[t]hat precedes in time").

*Gorss Motels, Inc. v. Safemark Systems, LP*, 931 F.3d 1094, 1100 (11th Cir. 2019).

In the instant action, Defendant does not dispute that its fax was an "advertisement". Additionally, Plaintiff's Complaint establishes that (1) Sophie was an employee, (2) the conversation between herself and Defendant took place, and (3) the conversation took place prior to the faxes being sent by Defendant. As such, the singular issue before this Court is whether Plaintiff's Complaint establishes that Plaintiff consented to the receipt of fax advertisements, warranting dismissal.

Defendant argues that *Gorss*, *supra*, establishes as a matter of law, that Plaintiff's action is subject to dismissal. In *Gorss*, the Eleventh Circuit determined that recipients of facsimile advertisements gave prior express permission to receive them from third parties by signing franchise agreements with a hotel franchisor, and thus, communications did not violate Telephone Consumer Protection Act's (TCPA) prohibition on unsolicited faxes. This Court agrees that *Gorss* establishes the type of consent at issue here – an actual conversation acknowledging future fax advertisements- is sufficient to render the subsequent faxes "unsolicited". However, the *Gorss* Court did not discuss, (or need to discuss) whether the alleged permission was given by a party with the authority to consent. Accordingly, while *Gorss*, establishes Sophie's interaction is sufficient to establish prior express permission, it does not establish, as a matter of law, the same result when there is a question of authority of the person giving the consent. As a result, this Court's analysis cannot stop with *Gorss*.

### B. Authority to Consent

According to Plaintiff, a determination as to whether Sophie's express conversation provided the requisite "consent" needed under the TCPA, falls on the Eleventh Circuit's analysis in *Osorio v. State Farm Bank*, F.S.B., 746 F.3d 1242 (11th Cir. 2014) and Alabama state agency law

7

as set forth in *Simple Helix, LLC v. Relus Technologies*, LLC, 493 F.Supp.3d 1087, 1118-19 (N.D. Ala. October 8, 2020). Relying on *Osorio*, Plaintiff argues that the facts here overcome Defendant's dismissal efforts. More specifically, Plaintiff contends that the Complaint affirmatively shows that Raymond Boone, the owner of Boone's Pharmacy did not give Sophie "express authority", nor did he intend to do so. (Doc. 34-2 at 5). Plaintiff also argues that Sophie did not have apparent authority "simply by virtue of her answering Defendant's cold-call". *Id*. Plaintiff, however, acknowledges that the circumstances "might be one circumstance among many that may be considered by the jury in deciding if the Defendant's alleged belief was objectively reasonable." *Id*. In that respect, it points out that Defendant could have looked at the NCPDP's file on Boone's Pharmacy to discover the name of its authorized representative, since it obtained Boone's contact information from that third party.

In *Osorio*, the Court determined a question of fact existed as to whether Plaintiff's housemate was an agent authorized to provide consent on his behalf based on the relevant state agency law. 746 F.3d 1242 (11th Cir. 2014). While *Osorio* instructs that agency law holds the key, it does not, as Plaintiff argues, bind the result here where the facts establish that Sophie was undisputedly an agent employee of Plaintiff. Accordingly, the Court must determine whether the Complaint establishes Sophie had authority to consent on behalf of Plaintiff.

Defendant argues that Sophie had both actual and apparent authority to provide consent to receive the subject faxes on behalf of Boone's. For support that apparent authority existed, Defendant relies on the actions of Plaintiff of hiring Sophie as an employee, placing her in the position of answering the phone and permitting her to give out and confirm the pharmacy's fax number. (Docs. 29-1 and 45). In contrast, Plaintiff contends that Sophie did not have any

8

authority and EzriRx could not believe in good faith that she did. (Doc. 34-2). For support, Plaintiff relies on Boone's Declaration, incorporated in the Complaint, which states that "[n]o Boone's employee, other than myself, is authorized to give consent to receive any sort of fax advertisements." (Doc. 20-3 at 3).

> Pursuant to Alabama law, "[a]n agent's authority to contract on behalf of his principal must be either expressed, implied, or apparent." *Mercedes-Benz U.S. Int'l, Inc. v. Cobasys, LLC*, 605 F. Supp. 2d 1189, 1203 (N.D. Ala. 2009) (quoting *Lawler Mobile Homes, Inc. v. Tarver*, 492 So. 2d 297, 304 (Ala. 1986)). Alabama law further provides:
>
>> [i]mplied authority may be viewed as actual authority given implicitly by the principal to the agent; and, as otherwise stated, it is actual authority circumstantially proved, or evidenced by conduct or inferred from course of dealing between the alleged principal and agent. It differs from apparent authority in that it is authority which the principal intended that the agent should have.
>
> *Patterson v. Page Aircraft Maint., Inc.*, 51 Ala.App. 122, 283 So. 2d 433, 125–26 (Ala. Civ. App. 1973) (quoting 2A C.J.S. Agency § 153). Further, an agent retains the authority to "[d]o everything necessary or proper and usual in the ordinary course of business for effecting the purpose of his agency." Ala. Code § 8-2-4.
>
>> As for apparent authority, a "principal is bound by acts of his agent under a merely ostensible authority to those persons only who have in good faith and without want of ordinary care incurred a liability or parted with value upon the faith thereof." *Id.* § 8-2-6. In addition, a principle clothes an agent with apparent authority by "holding the potential agent out to third parties as having the authority to act." *Malmberg v. Am. Honda Motor Co.*, 644 So. 2d 888, 891 (Ala. 1994). Similarly, an agent's apparent authority is "implied where the principal passively permits the agent to appear to a third person to have the authority to act on [the principal's] behalf." *Kindred Nursing Ctrs. East, LLC v. Jones*, 201 So. 3d 1146, 1154–55 (Ala. 2016) (quoting *Carraway v. Beverly Enters. Ala., Inc.*, 978 So. 2d 27, 30 (Ala. 2007)).

*Simple Helix, LLC v. Relus Technologies*, LLC, 493 F.Supp.3d 1087, 1118-19 (N.D. Ala. October 8, 2020). *See also* Ala. Code § 8-2-6 (1975) ("A principal is bound by acts of his agent under a merely

9

ostensible authority to those persons only who have in good faith and without want of ordinary care incurred a liability or parted with value on the faith thereof.").

As an initial matter, that Boone did not expressly give Sophie the authority to consent to receive fax advertisements, does not support that she had no authority. Rather, considering Boone's declaration as a well pled fact, the same negates express or implied authority, but in no way negates that Sophie did not have apparent authority. Moreover, to the extent Boone's declaration is meant to establish, as a fact, that Sophie did not have *any* authority, the same is a an "unwarranted factual deduction or legal conclusion masquerading as facts" which is insufficient to sustain Plaintiff's complaint. *Magwood, at* 843.

The Court is satisfied that Sophie had apparent authority to consent in this instance. "The existence and scope of a principal-agent relationship is normally question of fact to be determined by the jury". *Lawler Mobile Homes, Inc. v. Tarver*, 492 So.2d 297, 304-05 (Ala. 1986). However, in the instant action, there is no dispute as to the existence of an agency relationship. Further, regarding scope, the Complaint establishes that Sophie was an employee of Plaintiff who performed the task of communicating with the public by answering the pharmacy's phone. The Complaint does not include any facts to support that Sophie had been informed of any limitations on her performance of this task. While, this Court will not speculate as to Sophie's authority to perform non-communicative tasks, there is simply no factual evidence pled that Sophie was outside the scope of her authority to answer communications on behalf of the pharmacy. Further, there are no facts pled that Sophie was not permitted to give out or confirm the pharmacy's fax number, which inevitably invites the receipt of a fax. Instead, the Complaint confirms that these actions were taken in the "usual and ordinary course" of her employment.

*See* Ala. Code § 8-2-4. Accordingly, the Court is satisfied that by permitting Sophie to perform these tasks, Boone's held Sophie "out to third parties as having the authority to act" in the manner that she did. *See Simple Helix, LLC, supra.* Indeed, *Osorio*, relied on by Plaintiff, supports this determination. Specifically, in *Osorio*, while determining whether a question of fact existed on the defense of consent, the Court noted: "One way for State Farm to do so would be by demonstrating that Betancourt had an agency relationship with Osorio that permitted her to consent to Osorio receiving the calls, and by showing that she exercised that authority in this case by giving No. 8626 to State Farm in connection with her debt. 'It is settled law that the acts of an agent, within the scope of his real or apparent authority, bind the principal.' *Peninsula Land Co. v. Howard*, 149 Fla. 772, 6 So.2d 384, 388 (1941)." *Osorio*, at 1253. Here, the Complaint establishes an agency relationship and an exercise of that relationship, which binds the principal.

In reaching this conclusion, the Court notes that Plaintiff does not contest that Sophie had the authority to answer the phone or to give out or confirm the pharmacy's fax number. Instead, Plaintiff argues only that despite the facts set forth in the Complaint, Sophie did not have authority to consent *to receive junk faxes* as set forth in the declaration. Plaintiff's position is not compelling. While the alleged limitation may be artfully crafted, it is not factually supported and cannot defeat Plaintiff's actions to the contrary i.e., holding her out with authority. As a result, even considering Boone's declaration, there is no factual support that Sophie was outside the scope of her authority in this instance, where she (1) answered the phone on behalf of Boone's and (2) confirmed the fax number to EzriRx.

This Court is also not persuaded that dismissing this action would be equivalent to determining, as a matter of law, that anyone who answers a "cold-call" at a business would bind

11

the company as Plaintiff suggests; for example, a "night janitor" or an employee in one office location agreeing to the transmission of advertisements in another location. This Court's analysis makes no such determination. Rather, a complaint that pled facts like those hypothesized by Plaintiff when analyzed under state agency law, may very well overcome a Rule 12(b)(6) motion. But those facts are not pled in this instance. Instead, Defendant called Plaintiff, during business hours, spoke to an agent of Plaintiff after she answered the phone on behalf of "Boone's Pharmacy", and obtained express permission to send a fax advertisement to the location where Sophie physically worked.

Finally, Plaintiff's argument that Defendant could not have acted in good faith because it was on notice of the identity of the owner/operator of Boone's and did not seek to obtain consent from that individual, is unavailing. Plaintiff's position that a company must seek out an owner or authorized representative prior to communicating with a company defies practicality. Further, EzriRx's knowledge that Boone was the owner or authorized representative of Boone's does not equate to the impossibility that another employee could also consent, for example as an agent. Certainly, there may be some tasks which require a higher level of employment to bind the employer, but in this case, Sophie who was tasked with communicating on behalf of Boone's, answered the phone, and confirmed its fax number. EzriRx's knowledge that Sophie was not the owner of the company does not defeat that it obtained consent.

Based on the Complaint, Sophie, an employee of Boone's, affirmatively consented to receive fax advertisements from EzriRx. Pursuant to the TCPA, Sophie's actions constitute express consent, rendering EzriRx's subsequent faxes to Boone's solicited and defeating Plaintiff's claims.

## CONCLUSION

For the reasons stated herein above, Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Docs. 29 and 29-1) is **GRANTED**.[3]

**DONE and ORDERED** this 31st day of July, 2023.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Because Defendant's motion to dismiss is granted, Defendant's Motion to Strike (Doc. 29-2) is moot.